UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:21-CR-53 |
| | ) | |
| MOHAMMAD ZAIDAN, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Mohammad Zaidan has served 6 months of a 41 month sentence for a food stamp fraud case involving a $5 million loss.  He now seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) due to the COVID-19 pandemic [DE 31].  In a nutshell, I do not find compassionate release warranted for Zaidan, who is fully vaccinated.

Zaidan is a 54 year old male who is currently incarcerated at USP Thomson in Illinois, with an anticipated release date of October 11, 2024. [DE 33 at 2.]  In his motion, Zaidan claims that he suffers from Type 2 diabetes, obesity, hypertension, sleep apnea, and gastro-esophagel reflux disease ("GERD"). [DE 31 at 3.]  He claims these health conditions place him at a higher risk of complications should he contract COVID-19, and this justifies his immediate release.  *Id.*

Although Zaidan complains there is a "serious outbreak at Thomson" [DE 31 at 3], according to the Bureau of Prisons website, 0 inmates and 0 staff currently have confirmed cases of COVID-19 at Thomson USP. [www.bop.gov/coronavirus (last

viewed April 26, 2022).] The government has detailed the great lengths the Bureau of Prisons has gone through to contain the pandemic, including quarantining, social distancing, mandatory masks, screening of symptoms, and restricting outsiders. [DE 33 at 3-4.]

The government has provided Zaidan's medical records which confirm that Zaidan has Type 2 diabetes, obesity, hypertension, sleep apnea, and GERD. [DE 35.] Zaidan is fully vaccinated - he received his first immunization on March 26, 2021 and his second immunization on April 16, 2021. [*Id.* at 163.] Zaidan refused a third dose on November 18, 2021. *Id.*

Zaidan was involved in a scheme to defraud the federal government. As an owner of a convenience store in Gary, Indiana, his store was certified to offer transactions in food stamps, or "SNAP" benefits. [PSR, DE 18, ¶¶ 15.] Although retailers may accept SNAP benefits only in exchange for eligible food, he developed a scheme where he offered "cash-back" to customers in exchange for a certain percentage of the total SNAP transaction. [*Id.* ¶¶ 15-22.] In other words, Zaidan would discount purchase the food stamps from customers. This gave the customer cash to do with as they please (albeit a reduced amount from the face value) and then Zaidan would redeem the SNAP benefits for full value and pocket the difference. There was evidence that Zaidan's store redeemed SNAP at a rate 2,709% higher than the average redemptions for similar stores in the Lake County area. [*Id.* ¶ 23.] This scheme went on for almost 5 years, defrauding the SNAP program, and causing a loss of over $5 million.

[*Id.* ¶ 29.]  He used the proceeds to buy things like luxury cars. [*Id.* ¶ 82.]

On May 21, 2021, Zaidan entered a guilty plea to a one-count information charging him with wire fraud, in violation of 18 U.S.C. § 1343. [DE 8.]  On September 17, 2021, I sentenced Zaidan to the low-end of the Guidelines range - 41 months imprisonment. [DE 27.]  At the time of sentencing, the PSR noted Zaidan's Type 2 diabetes, high blood pressure, and GERD. [PSR ¶¶ 65-67.]

Zaidan submitted a request for reduction in sentence to the warden, which was denied. [DE 33-2, 33-3.] Therefore, he has exhausted his administrative remedies.

Section 3582(c)(1) permits a district judge to release a prisoner if the judge finds "extraordinary and compelling reasons" for that step, and the judge has also considered any applicable policy statement of the Sentencing Commission and reviewed the criteria of § 3553(a) "to the extent that they are applicable."  18 U.S.C. § 3582(c)(1).  The Seventh Circuit held in *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), that none of the Sentencing Commission's policy statements apply to compassionate-release requests made by prisoners themselves (as opposed to requests made by the Bureau of Prisons).  So I'm left with the question of whether an extraordinary and compelling reason justifies release — and if so, whether release is appropriate given the factors in section 3553(a).  As the Seventh Circuit has held, it is best to proceed in that order — only after finding an extraordinary and compelling reason for release need I, as part of "exercising the discretion conferred by the compassionate release statute, . . . consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing

3

reduction to award the prisoner." *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (quoting *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021)).

I have reviewed the briefs and records in this case and conclude there are no "extraordinary and compelling reasons [that] warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). Zaidan does face some health issues like Type 2 diabetes, obesity, hypertension, sleep apnea, and GERD. However, even if Zaidan may be at an elevated medical risk were he to contract COVID-19, these medical risk factors are surpassed by the fact that Zaidan received two doses of the vaccine, and then declined a booster.

Zaidan contends in his reply that "the government's argument that vaccination absolutely precludes a finding of COVID-related extraordinary circumstances is contrary to the reality of this highly contagious and deadly virus." [DE 37 at 1.] However, Zaidan's argument runs head long into this circuit's firm precedent. As the Seventh Circuit has recognized in *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021):

> [F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release.

"Impossible" is a pretty high standard. And the Seventh Circuit recently upheld and applied its own standard when it said that when a prisoner "is vaccinated, he is

4

ineligible" for compassionate release. *United States v. Kurzynowski,* 17 F.4th 756, 760-61 (7th Cir. 2021); *see also United States v. Barbee*, 25 F.4th 531, 533 (7th Cir. 2022) (upholding denial of compassionate release where prisoner had Type 2 diabetes, hypertension, and obesity, finding the request was foreclosed because the defendant was fully vaccinated); *United States v. Adkins*, 854 F. App'x 758, 759-60 (7th Cir. 2021) (finding a defendant with asthma and other ailments does not present an extraordinary circumstance in light of vaccination). Zaidan, who is now fully vaccinated, is therefore unable to obtain compassionate release. Finally, to the extent the protection afforded to Zaidan by the COVID-19 vaccine has waned in the year since it was administered to him, the fact that he refused a booster shot does not justify his release. It would not be sensible to conclude that an inmate can refuse a vaccine and then be heard to argue that he must be released from custody because he has no protection from the very disease the vaccine has been shown to successfully prevent (or at least diminish). Zaidan is the author of that story.

I could stop here, but I will add for the sake of completeness, that the section 3553(a) factors do not come close to weighing in Zaidan's favor. The section 3553(a) factors, which are well-known by this point, include the nature and circumstances of the offense and history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and the kinds of sentences and sentencing range for the applicable category of offense committed. 18 U.S.C. §

3553(a).  As noted at sentencing, although Zaidan had no previous run ins with the law, this was a jaw-dropping level of fraud.  Zaidan not only defrauded the system, but deprived nourishment to the recipients of the SNAP benefits for a very long time — almost 5 years in fact.  I view Zaidan's behavior as a really offensive abuse of a system meant to help lower income Americans with food and nutrition.  Zaidan tries to portray himself as a non-violent offender with community ties [DE 37 at 1], but I do not think it would promote justice to release him now, with more than 80% of his sentence left to serve. Continued incarceration is needed to provide just punishment and deterrence.

Finally, the fact that Zaidan has family support and has taken advantage of BOP classes while incarcerated [DE 31 at 4] are also inadequate bases for relief.  Even an exemplary prison record does not justify release.  *See United States v. Wieber*, No. 3:14-CR-74-TBR, 2020 WL 1492907, at *2-3 (W.D. Ky. Mar. 27, 2020) (denying relief where defendant took classes in prison and collecting cases stating compassionate release cannot be based on rehabilitation alone); *United States v. Carr*, No. 02-106(JDB), 2020 WL 4192560, at *2 (D. D.C. July 21, 2020) (denying compassionate release notwithstanding defendant's completion of a "wide range of classes" and drug program).  While Zaidan's participation in classes is commendable, and I encourage him to continue such laudable actions, it is not a basis for release.

## Conclusion

For all of these reasons, Mohammad Zaidan's  motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) due to the COVID-19 pandemic [DE 31] is

6

DENIED.

ENTERED: April 26, 2022.

                                                 /s/   Philip P. Simon  
                                                PHILIP P. SIMON, JUDGE  
                                                UNITED STATES DISTRICT COURT